**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               :
Melvin C. Duniya,              :
                               :
          Plaintiff,           :
                               :
     v.                        :
                               :   Civ. Case No. 04-0851(GK)
Condoleeza Rice,               :
Secretary, United States       :
Department of State,           :
                               :
          Defendant.           :
_____:
```

**MEMORANDUM OPINION**

Pro se Plaintiff, Melvin C. Duniya, an African-American male, brings this action against Defendant, Condoleeza Rice, Secretary of State.[1]   Plaintiff alleges that the United States Department of State ("the State Department"), through its agents, discriminated against him based on his race and national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 et seq.   Plaintiff also alleges that the State Department retaliated against him, in violation of Title VII, because he engaged in protected Equal Employment Opportunity ("EEO") activity.   This matter is before the Court on Defendant's Motion for Summary Judgment [#18].   Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion is **granted.**

_____

[1] Secretary Rice is named as a Defendant in her official capacity.

**I.    BACKGROUND**

**A.    Facts[2]**

Plaintiff is an African-American Untied States citizen who worked for the State Department as the Principal Class B Cashier in the American Embassy, Tokyo, Japan, between April 1997 and June 2001.  As the Principal Class B Cashier, Plaintiff supervised employees in the Embassy's Cashiering Section including an Alternate Class B Cashier, sub-cashiers, and a disbursing clerk.

---

[2] Plaintiff failed to submit a separate Statement of Genuine Issues in response to Defendant's Statement of Material Facts as required by this Court's Local Civil Rule 7.1(h) ("LCvR 7.1(h)"). Under LCvR 7.1(h) a party's opposition must be "accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."

Plaintiff's Opposition includes a section titled "Statement of Material Facts and Procedural Background," but it is devoid of any reference or citation to the record in this case.  Instead, Plaintiff's Opposition rests on conclusory claims which lack any evidentiary support.

The Court is not required to search the record for disputed material issues; Plaintiff bears the burden of establishing that disputed facts require resolution through a trial when responding to Defendant's Motion for Summary Judgment.  See SEC v. Banner Fund Int'l, 211 F.3d 602, 616 (D.C. Cir. 2000)("If the party opposing the motion fails to comply with [LCvR 7.1(h)], then the district court is under no obligation to sift through the record and should instead . . . . deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule [LCvR 7.1(h)] statement.") (citations and quotations omitted).  Accordingly, the facts set forth herein are from Defendant's Statement of Material Facts and supporting affidavits.  LCvR 7.1(h) ("[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").  Given Plaintiff's failure to comply with LCvR 7.1(h), all facts are deemed uncontroverted.

In addition to his supervisory duties, Plaintiff was responsible for advancing funds to other cashiers, making cash disbursements, receiving collections, making deposits, entering financial data, and maintaining financial records.

Katsumi Ogura, an Alternate Class B Cashier at the Embassy, was one of Plaintiff's subordinates.  As the Alternate Class B Cashier, she was responsible for acting in Plaintiff's stead during his absences.

In September of 2000, Foreign Service Officer Donna S. Helmholz began serving as the Embassy's Financial Management Officer.  In October of 2000, shortly after her arrival at the Embassy, Helmholz announced that the Embassy Financial Management Center's employees would participate in a cross-training program. Helmholz concluded that the cross-training was necessary because, given the small staff, employees would have to cover for one another during absences.

As part of the training program, Ogura was to temporarily assume Plaintiff's duties as the Principal Class B Cashier and Plaintiff was to perform Ogura's duties as Alternate Class B Cashier.  Ogura began training in October of 2000 and performed Plaintiff's duties for approximately six weeks.  During three weeks of that period, Plaintiff was on annual leave.  Helmholz instituted a second training period for Ogura in January of 2001.  Plaintiff believed that the cross-training program did not comport with the

3

regulations that govern cashiers' accountability for funds and assets as set forth in the Department of State's Foreign Affairs Handbook.

On January 16, 2001, Edward J. Samario, the Embassy's Assistant Financial Management Officer, gave Plaintiff an oral reprimand for insubordination and "setting a bad work example." Def.'s Mot. Summ. J. Ex. 6 at 3.  Samario issued the reprimand after Plaintiff refused to comply with an order to print a receipt and called Helmholz a "jerk" in front of subordinates.  Id. at 4.

On February 8, 2001, Plaintiff contacted EEO Counselor Virginia Bennett and alleged that the cross-training assignments were, in reality, racially motivated efforts to strip him of authority.  Plaintiff alleged that he was the only supervisor who had been forced to switch roles with a subordinate during the training.  Plaintiff also complained that none of the Embassy's Cashiering Section employees received performance awards in January of 2001 while employees in every other section of the Financial Management Center had received the $100 cash bonuses.  Plaintiff alleged that the Cashiering Section employees did not receive awards because he is an African-American.  Samario and Helmholz learned of Plaintiff's discussions with Bennett on February 16, 2001.[3]

---

[3] The EEO Counselor's Report states that Samario and Helmholz learned of the informal EEO complaint on February 16, 2001, but

(continued...)

Between January 24, 2001 and February 16, 2001, Plaintiff allegedly failed to perform data entry and prepare deposit slips, as part of the cross-training, despite Samario's orders for him to do so.  Additionally, on February 20, 2001, Plaintiff terminated Ogura's cross-training without authorization by Helmholz or Samario.[4]  According to his affidavit, Samario drafted a written reprimand for Plaintiff that same day after learning that Plaintiff had terminated Ogura's training.  Samario issued the letter to Plaintiff on February 22, 2001.

Cornelis M. Keur, the Embassy's Minister-Counselor for Administration, unsuccessfully attempted to work with Plaintiff, Samario, and Helmholz to resolve Plaintiff's disputes. Notwithstanding Keur's efforts, in April and May of 2001, Plaintiff and Samario continued to disagree about Embassy financial regulations governing a petty cash voucher and, once again, about cashiers' accountability.  Plaintiff filed a Formal EEO Complaint on June 15, 2001 and resigned on June 29, 2001.

---

[3](...continued)
Samario's affidavit states that he learned of Plaintiff's informal EEO complaint on February 21, 2001.  Plaintiff did not file a Formal EEO Complaint until June 15, 2001.

[4]The record is inconsistent about the date that this incident occurred.  Samario's affidavit and the formal reprimand state that Plaintiff terminated Ogura's cross-training on February 20, 2001, but Defendant's Motion indicates that the incident transpired on February 15, 2001.

**B.    Procedural History**

On September 4, 2003, the United States Equal Employment Opportunity Commission ("the Commission") ruled that the State Department had not engaged in unlawful discrimination.    The Commission rejected Plaintiff's claims that the Department had engaged in racial discrimination by usurping Plaintiff's authority, requiring him to cross-train with a subordinate, transferring accountability for funds, denying the Cashiering Section a group award, threatening him with disciplinary action, and requiring him to supervise a disbursement clerk.  The Commission also rejected Plaintiff's claim that Samario retaliated against him, for engaging in protected EEO activity, by issuing the February 22, 2001 reprimand.    The Commission dismissed Plaintiff's Formal EEO Complaint and advised him of his right to sue.

On November 26, 2003 Plaintiff filed a Complaint in the United States District Court for the Northern District of Illinois alleging that the State Department had discriminated against him based on his race and national origin.   Plaintiff's Complaint alleged that Defendant had 1) usurped his supervisory authority by issuing contradictory directions to his staff without informing or consulting him; 2)  forced him to switch duties with a subordinate; 3) stripped him of supervisory authority; 4) given him assignments that required him to work overtime without compensation; 5) denied the Embassy Cashiering Section a group award; and 6) engaged in

reprisals against him because he engaged in protected EEO activity.

On April 22, 2004, the Northern District of Illinois granted Defendant's Motion to Transfer for Improper Venue and transferred the matter to this Court.

## II.  STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324; see also Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (nonmoving party has affirmative duty "to provide evidence that would permit a reasonable jury to find" in its favor); Crenshaw v. Georgetown Univ., 23 F. Supp. 2d 11, 15 (D.D.C. 1998) (noting that the

"adverse party must do more than simply 'show that there is some metaphysical doubt as to the material facts'" (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986))).

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Washington Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## III. ANALYSIS

### A. Racial and National Origin Claims Under Title VII and McDonnell Douglas

Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "In the absence of direct evidence of discrimination, disparate treatment claims under Title VII are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S.

792 (1973)."  Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149 (D.C. Cir. 2004).

The McDonnell Douglas framework allocates the burden of production and structures how parties in Title VII cases are to present their proof.  Teneyck, 365 F.3d at 1149.  Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination.  See McDonnell Douglas, 411 U.S. at 802.  "[A] plaintiff makes out a prima facie case of disparate-treatment discrimination by establishing that: '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'"  George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005) (internal citations omitted).

If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to "produce admissible evidence that, if believed, would establish that the employer's action was motivated by a legitimate, nondiscriminatory reason."  Teneyck, 365 F.3d at 1151 (internal citation omitted); see McDonnell Douglas, 411 U.S. at 802.  "The employer's burden is one of production, not persuasion."  Teneyck, 365 F.3d at 1151 (internal citation omitted).

If the employer satisfies this burden, "'the McDonnell Douglas framework – with its presumptions and burdens – disappear[s], and

the sole remaining issue [i]s discrimination <u>vel</u> <u>non</u>.'" <u>Id.</u> at 1151

(quoting <u>Reeves</u>, 530 U.S. at 142-43).   At this point, "a court

reviewing summary judgment looks to whether a reasonable jury could

infer intentional discrimination . . . from all the evidence,

including '(1) the plaintiff's <u>prima</u> <u>facie</u> case; (2) any evidence

the plaintiff presents to attack the employer's proffered

explanation for its action; and (3) any further evidence of

discrimination that may be available to the plaintiff (such as

independent evidence of discriminatory statements or attitudes on

the part of the employer).'"   <u>Carter v. George Washington Univ.</u>,

387 F.3d 872, 878 (D.C. Cir. 2004) (quoting <u>Waterhouse v. Dist. of</u>

<u>Columbia</u>, 298 F.3d 989, 992-93 (D.C. Cir. 2002)).

### 1.  Plaintiff Failed to Make a <u>Prima</u> <u>Facie</u> Case of Racial or National Origin Discrimination

There is no question that Plaintiff has met the first

requirement for establishing a <u>prima</u> <u>facie</u> case of racial

discrimination, namely that, as an African-American, he is a member

of a protected class.[5]   Defendant does not deny this fact.

---

[5] Plaintiff's Complaint only includes claims that the State
Department discriminated against him based on his race and national
origin, but his Opposition includes allegations of color and sex
based discrimination.  <u>Compare</u> Pl.'s Compl. at ¶ 9 (excluding sex
and color based discrimination claims) <u>with</u> Pl.'s Opp'n at 15 ("My
racial, national, and gender status seem to make me a target for
Ms. Donna Helmholz.") <u>and</u> Pl.'s Opp'n at 24 ("If I was not Black,
but Japanese, neither my staff nor I would have been excluded.").
  Because, as discussed below, Plaintiff has not provided
any evidence supporting an inference of discrimination, the Court need
not address whether Plaintiff has adequately alleged discrimination
(continued...)

Plaintiff's failure to receive a monetary award was, arguably, an adverse employment action that satisfies the second requirement for establishing a prima facie case.[6]   However, for the reasons discussed below, Plaintiff has failed to meet the third requirement, to wit, establishing that the actions about which he complains give rise to an inference of discrimination.

### a.   Adverse Employment Actions

An employment action "does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage."  Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2003); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in

---

[5](...continued)
on the basis of sex, nationality, or color.

[6]Plaintiff's Complaint lists "denied group award" as a factual basis for his discrimination claim.  It is not entirely clear from the record whether Plaintiff is claiming that he suffered a monetary loss when the members of the Embassy's Cashiering Section were denied a group award, or whether he is attempting to assert his subordinates' loss as a basis for his complaint.  It is also not clear from the record whether Plaintiff, as a supervisor, was even eligible for any such award.  However, in making inferences favorable to Plaintiff as the non-moving party, the Court assumes, but does not decide, Plaintiff was asserting his own monetary loss.

benefits."). Formal criticisms or reprimands do not ordinarily constitute adverse employment actions that can support a claim under Title VII "without additional disciplinary action such as a change in grade, salary, or other benefits." Stewart, 275 F.3d at 1136. Temporary changes or a decrease in the quality of responsibilities may constitute adverse action. Holcomb v. Powell, 433 F.3d 889, 902-03 (D.C. Cir. 2006). Our Court of Appeals has also found there to be adverse action where the employer curtailed the employee's supervisory responsibilities. Burke v. Gould, 286 F.3d 513, 522 (D.C. Cir. 2002). An employee may suffer an adverse action even in the absence of "reduction in grade, pay or benefits." Holcomb, 433 F.3d at 902. Finally, denial of a monetary bonus may constitute an adverse employment action under Title VII. Russell v. Principi, 257 F.3d 815, 819 (D.C. Cir. 2001).

Plaintiff cannot base his discrimination claims on the formal and informal reprimands Samario issued because they were not accompanied by any additional disciplinary actions or "tangible change in [his] duties or working conditions . . . ." Stewart, 275 F.3d at 1136, 1134. Moreover, even if the Court were to equate the temporary changes in Plaintiff's normal duties at issue with curtailment of his supervisory responsibility, they would not constitute adverse employment actions because they were not for substantial periods of time. See Holcomb, 433 F.3d at 902-03.

Short term cross-training assignments, like the ones at issue in this case, are not significant employment changes. _Burlington Indus., Inc._, 524 U.S. at 761.

The only cognizable adverse employment action that Plaintiff arguably suffered is the denial of the monetary group award. _Russell_, 257 F.3d at 819 (holding that the denial of a monetary bonus is an adverse employment action under Title VII). If Plaintiff could prove that he failed to receive a monetary award because of unlawful racial or national origin discrimination, he could recover compensation under Title VII. _Id._ Thus, insofar as the Court infers Plaintiff is asserting his own monetary deprivation as the basis for his claim (as opposed to his subordinates' loss) he has satisfied the second requirement for establishing a _prima facie_ case.

### b.   Inference of Discrimination

Plaintiff offers no evidence, sworn or unsworn, which would reasonably warrant an inference of discrimination, other than the single fact that he is an African-American. In contrast, Defendant's Motion for Summary Judgment was supported by sworn affidavits and other evidence substantiating legitimate non-discriminatory reasons for the employment decisions at issue in this case.

For example, in response to Plaintiff's claims that another supervisor, Voucher Section Chief, Yuki Sugimoto, was not required

to switch positions with her subordinates as part of the cross-training program, Sugimoto provided an affidavit verifying that she had in fact cross-trained with her subordinates before and after Helmholz's arrival.  Compare Pl.'s Opp'n at 5, 17 (claiming Plaintiff and Ogura were the only employees forced to cross-train) with Def.'s Mot. Summ. J. Exs. 6, 9, 26, 27, 28, 29 (verifying by affidavit that several Embassy employees, including Sugimoto, were participating in cross-training).  Defendant also filed an affidavit stating that the Embassy Cashiering Section did not receive a group award because Plaintiff failed to recommend his section for such an award.  Def.'s Mot. Summ. J. Ex. 29.

Plaintiff did not provide any evidence, other than his unsworn statements, to rebut Defendant's affidavits.  Instead, he relied on his unsworn Opposition in which he merely speculates that Defendant's actions were motivated by race.  Plaintiff's response is inadequate under Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") and controlling Supreme Court authority.  Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 322.

Because Plaintiff only offered his own unsworn speculative statements to counter Defendant's eight affidavits and interrogatory answers, he has failed to make a prima facie case that the State Department engaged in illegal racial or national origin discrimination.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  There is no evidence in the

14

record from which a reasonable jury could conclude, by a preponderance, that an inference of discrimination could be drawn. Thus, Plaintiff has failed to establish a prima facie case that the State Department engaged in illegal discrimination or retaliation.

**B.   Retaliation Claims Under Title VII**

"To establish a prima facie case of retaliation, the plaintiff must present evidence that she (1) engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights."  Holcomb, 433 F.3d at 901-02.

Plaintiff engaged in protected activity by contacting EEO Counselor Virginia Bennett to informally complain about perceived discrimination, and by subsequently filing a Formal EEO Complaint. However, even if the Court were to conclude that the February 22, 2001 formal reprimand was an adverse employment action (which is very doubtful given the discussion on pages 11-13, supra), Plaintiff has not offered any evidence to demonstrate a causal relationship between his EEO activities and the disciplinary letter; therefore, he has not established a prima facie case.

Plaintiff alleges that Samario formally reprimanded him because he contacted Bennett about filing an EEO complaint. Defendant filed an affidavit citing Plaintiff's insubordination as the basis for all reprimands and threatened discipline.  Def.'s Mot. Summ. J. Ex. 6.  Defendant's affidavit also states that

15

Samario reprimanded Plaintiff for terminating Ogura's cross-training without authorization.

Faced with sworn affidavits stating legitimate non-retaliatory bases for the reprimand, Plaintiff responded by relying on his unsworn Opposition which contains nothing more than speculation about Samario's motives.[7]   Again, Plaintiff's response does not satisfy the requirements of Rule 56.   Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 322.   No jury could reasonably find that Samario retaliated against Plaintiff based on the evidence in the record.

## C.   Hostile Work Environment and Constructive Discharge Claims Under Title VII

To establish a hostile work environment claim, a plaintiff must show behavior "sufficiently severe or pervasive to alter the conditions of [their] employment."   Pa. State Police v. Suders, 542 U.S. 129, 133 (2004) (citations and quotations omitted).   To establish a constructive discharge claim, a plaintiff must demonstrate discriminatory conduct so severe and intolerable that resignation is a fitting response.

Plaintiff's Complaint in the instant case could be read to include hostile work environment and constructive discharge claims.

---

[7] Plaintiff directed his Opposition, primarily, towards establishing that Defendant's agents did not comply with State Department regulations governing accountability and financial management.   However, in the absence of any evidence that Defendant's actions were racially motivated or retaliatory, the alleged failure to comply with accountability regulations is a management issue that is totally irrelevant to claims under Title VII.

However, the record in this case is devoid of evidence suggesting Plaintiff experienced discriminatory treatment that could satisfy the exacting standards for bringing such claims.

## IV.  CONCLUSION

To withstand the Motion for Summary Judgment, especially given Defendant's extensive affidavits, Plaintiff was obligated to "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"   Celotex Corp., 477 U.S. at 324.  He failed to do so. Accordingly, Defendant's Motion for Summary Judgment is **granted.**

May 24, 2007

/s/_____
Gladys Kessler
U.S. District Judge

**Copies to**:  **attorneys of record via ECF and**

**Melvin C. Duniya**
**1212 South Michigan Avenue**
**Apartment 2504**
**Chicago, IL 60605**